Thank you, Your Honor. This is an action brought under the Antitrust Statute. It's brought specifically under Section 16 of the Clayton Act, and it alleges violations of Section 7 for the acquisition of the largest grocery store chain in the country, buying the second largest grocery store chain. We filed the case approximately one year before any governmental action. Prior to that, we went through, I think, three different motions for dismissal. Ultimately, the Court denied the defendant's motion to dismiss, but at the same time prohibited us from entering a stay, pending the outcome of the FTC case, which had then been filed. The Court ended up entering a judgment against us and in favor of the defendants, even though the defendants lost and the plaintiffs won. We filed the motion for summary judgment after the Court in Oregon issued a preliminary injunction, the State Court in Washington issued a judgment and an injunction, and the Court in Colorado had entered an injunction, and we were not allowed to move. We were not allowed any discovery during this time period. And then finally, when the other judgments were made, three different tribunals, we moved for summary judgment, and under the Borden case, we moved to have a judgment entered in our case. We are the only consumer case and the only federal consumer case. So, counsel, what case would you rely on for the proposition that you're a prevailing party on the basis of injunctions that were entered in other courts? We would rely on Section 16 itself, which has a very unusual designation like that. It doesn't say you have to be a prevailing party. It says if the plaintiff substantially prevails, and we had sent a letter to the Court in which that was interpreted as allowing the plaintiffs, whether they tried the case or not, that was issued by Judge, I think, Huntington from the Court in Oregon. And she said at that time, she just sent the letter out, we sent it to the Court about two weeks ago. And she said that even though it's a preliminary injunction, hers was only a preliminary injunction, and then going to the FTC, she said that the people who did not participate, the other states, had substantially prevailed. Not prevailed actually, but substantially prevails. And she said that was sufficient, that there was a preliminary injunction. In our case, in the case in Washington, it was a judgment. A judgment was entered, permanent injunction. And the same with Colorado. And then what happened is they collapsed. And Albertson then sued Kroger for bad faith merger negotiations, which we also alleged with regard to the chair of its acquisition. So the point was, is that we had a summary judgment. And under Rule 56, if they don't answer, and they didn't, they didn't answer it. Are you disputing that the case is moot? I am saying that I am disputing the fact, if you say that it's moot, the answer would be yes. It would not be. It would not be moot. Because it still exists according to the case in Borden. And it still persists according to the Supreme Court decision in American stores. It says it continues to persist. And you can see what we put in is that we need the injunction. We can't rely on the injunctions of the other cases because there might be a similar, they might try to resurrect it. And at the same time, at the same time that these judgments were issued, the PBS was noting that the new FTC and the new DOJ were, FTC in particular, that's at page 13 of our brief. If Kroger and Albertsons are suing each other, what is the likelihood that they might try to resume a merger? Isn't that a little bit speculative at this point? In my opinion, Your Honor, nothing is speculative about these folks. There's a likelihood, as we've put on page 13, these people can go into a settlement of their case and it'll turn out to be some kind of effort to join them again. And we pointed out that when the judgment came down, it was reported, this is on page, I thought it was page 13, in which it was announced that the FTC might allow, the new FTC might allow the merger to go forward. It was an announcement. Now there is no injunction, federal injunction on behalf of except this one. And if we have the judgment, which we are entitled to, because Borden says the private case and the government case are to be, they have different interests and one proceed, they're not mutually exclusive. They have different interests. And because of that, each is entitled to its own judgment. Now in the Borden case, it was interesting because the plaintiff had an injunction on the same issue. It was under the Clayton Act Section 2A. And the federal court was coming in at a different court. And since there was an injunction by the private party, the federal court, I mean, the DOJ wanted a judgment itself because they had a judgment and it was for the same thing. The court ruled at that time that would be useless, fundamentally moot. And the Supreme Court said, no, because the interests are different. And because the interests are different, they persist. Even after an injunction is issued, it continues to persist. And in this particularly so, there's a real danger with the change in the administrations. So we're very concerned about that. And so I have two minutes left, which I wanted for the rebuttal. But I mean, I would be happy to answer. Do you want to reserve for a rebuttal then? I do want to reserve for a rebuttal. Well, I want to hear from the other side. All right. Thank you, Your Honor. Thank you, Your Honor. Sonia Pfaffenroth on behalf of Kroger. And we have agreed to split our 10 minutes, seven for us and three for my colleague, Mr. Kulp, who is representing Cerberus. And I would like to reserve 30 seconds for rebuttal, if possible. Why don't you just try to wrap it up all at once? Yes, absolutely, Your Honor. Your Honors, appellants won nothing in this case. They lost three motions to dismiss. They lost a motion for preliminary injunction and they lost a motion for summary judgment. They never even established to the court below that they had standing to bring this suit. Contrary to Mr. Alioto's suggestion, we did oppose summary judgment. It is in the appellate record at 2 ER 22. And the motion to dismiss, the singular motion to dismiss that was denied by the court below was in the same minute entry that stayed the case and was without prejudice to refiling after the stay was lifted. Appellants came nowhere close to substantially prevailing or prevailing in any sense of the word in this case. Instead, they are asking the court for a win and for attorney's fees based on orders in separate government litigations and joining the proposed merger here. But by the time the stay was lifted and they moved for judgment, the case was moot. It remains moot today and it was appropriately dismissed as moot by the court below. Why is not a merger likely to reoccur? No, Your Honor. Following the preliminary injunction that was entered into by the federal court in Oregon and the permanent injunction that was issued the same day by the state court in Washington, the parties abandoned the merger publicly in SEC filings. They withdrew both parties. The parties withdrew the H.S.R. filings with the with the federal agency. The merger has been unequivocally abandoned. They're still in business and they can start talking again. Theoretically, yes, Your Honor. However, were that to be the case, that would be an entirely new merger that would be subject to new regulatory filings and review by the federal government. And perhaps a new market. And perhaps a new market. And that's precisely the issue, Your Honor, that was addressed by the Eighth Circuit in the U.S. v. Mercy health decision. That was a case in which the case involved a proposed hospital merger. That merger was abandoned by the parties. When the case was on appeal to the Ninth Circuit, that was a situation in which all of the parties were asking the Eighth Circuit to rule and the Eighth Circuit declined, saying that that would be a case in which there would be no live controversy left because there would need to be a potential threat to competition, which there was not. The court, quote, declined to issue a judgment which has no present relevance on the mere chance that it could have some marginal utility in an uncertain future. That is the same situation that we are addressing here. The court below appropriately dismissed this case as moot because any injunction that the court attempted to rule on at that point would be an impermissible advisory opinion under the Supreme Court's decision in Pricer v. Newkirk where the court held that the rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed. So, Your Honor, again, with respect to mootness, this case is clearly moot. The appellants are also claiming that they are substantially prevailing parties. Again, they have not prevailed in any sense of the word. The court's decision to dismiss this case as moot is not the type of ruling on the merits that entitles plaintiffs to fees. In fact, they faced the same situation in the First Circuit in which appellate's counsel here and 23 of the same 24 plaintiffs brought a case to challenge the merger of JetBlue and Spirit. That was a case in which there was a parallel DOJ proceeding. In that parallel DOJ proceeding, the merger was blocked and the First Circuit held both that the case was appropriately dismissed as moot in the parties had been subject to a federal injunction and had abandoned the transaction and also that they were not substantially prevailing parties entitled to fees in that case. And they pointed specifically to the Supreme Court's decision in Buckhannon. In Buckhannon, the Supreme Court made clear that the type of catalyst theory that the plaintiffs are, sorry, that appellants are pointing to here is not a basis for the awarding of fees because it is not, it lacks the necessary judicial imprimatur to award recovery. The Supreme Court there in Buckhannon said, we cannot agree that the term prevailing party authorizes federal courts to award attorneys fees to a plaintiff who by simply filing a non-frivolous but nonetheless potentially meritless lawsuit, it will never be determined, has reached the sought-after designation without obtaining judicial relief. That Supreme Court precedent applies equally here and it was pointed to by the court in the First Circuit when declining to find that fees were appropriate in appellate's counsel case regarding JetBlue and Spirit. Your Honor, this is a case in which it is clear that there is no basis either to disturb the court's ruling below that the case is moot or to find that the appellants are prevailing parties. The questions presented for this court's consideration are whether judgment was appropriately entered for defendants, it was, whether the court was properly, whether the case was properly dismissed as moot, it was, and whether the appellants are substantially prevailing parties entitled to attorney's fees in this case, they are not. Thank you, counsel. Is there anything else? Only if the court has questions. I don't think we have any questions, so we'll, to balance your time, we can go over to your co-counsel and we can hear from him. Thank you, Your Honor. Thank you. Thank you, Your Honor. May it please the court, Brian Copeland Deckard, LLP, on behalf of Appellee Cerberus Capital Management. This is a textbook case of forfeiture. Appellant's opening brief fails to address any of the independent grounds for dismissal of their claim against Cerberus, all of which run doubtedly correct. In fact, the opening brief mentioned Cerberus in just a single sentence, in passing, in the jurisdictional statement about a Section 1 claim that plaintiffs had unmistakably abandoned. That is not enough to preserve any issue as to Cerberus, and appellants cannot salvage that failure in their reply, in which they still fail to challenge all the grounds for dismissal. My friend on the other side now seems to suggest that the district court's mootness ruling replaced the ruling dismissing the claim against Cerberus, but that was not argued in the brief, and it is wrong in any event. The district court granted Albertson's and Kroger's motion to dismiss the claims in the second amended complaint as moot. That complaint contained no claims against Cerberus. The claim against Cerberus, which was asserted in the first amended complaint, had been dismissed with prejudice more than a year before. The district court never purported to revise its decision on that dismissal, and appellant's opening brief does nothing to challenge that dismissal either. That forfeiture alone is fatal to their claim. There is no basis to overturn the district court's decision as to Cerberus, and we respectfully ask that this court affirm. Unless the court has any questions, I'll yield the rest of my time. What was the claim made in the first amended complaint against Cerberus? It was a Section 7 claim, your honor. And as the district court pointed out, there's no basis for a non-party to a merger in which Cerberus was to be liable. Yes, your honor. Was Cerberus a party to the merger? Cerberus was not a party to the merger, your honor. And as the district court pointed out, a non-party to a merger cannot be liable under Section 7. Plaintiffs did not dispute that in their opening brief. We pointed it out in our response brief, and they still didn't say anything about that in their reply brief. That just underscores the fact that they have no viable claim against Cerberus. Unless there are further questions. No other questions. Thank you, counsel. Thank you, your honor. Mr. Aliotto, your rebuttal. Would you address the Cerberus claim? Pardon me? Yeah. Could you address the Cerberus claim? Yes. In Cerberus, we found out that there was a private meeting of the chief executive officer of Cerberus, and the chief executive officer of Kroger, and the chief executive officer of Albertson was excluded. And subsequently, what they required as part of the merger, notwithstanding what counsel said, it's in the merger agreement, this particular, the offset, it's in the merger agreement. It is a part of the merger agreement. Okay. But what happened was, is that they agreed, Kroger and the head of Cerberus, that they would take the whole profit, $4 billion, and distribute it so that Albertson wouldn't have it. And that was the entire profit. So now they would be substantially crippled, which they later claimed they were. They would be substantially crippled in any attempt by them to try to not be in the merger, but to compete on their own. Do you agree with Mr. Culp that you didn't make that claim in your second amended complaint? Yes, we did say it. We stated that the claim in the second amended complaint. Where did I? One moment. This would be in, this would be in volume two of the four appendices, and beginning at, and beginning at three, I believe is our complaint. And in the complaint, as we noted in the brief, we quoted it in the brief. And at the moment, I can't find it in where it is in the complaint. The complaint was very, very instructive. It covered everything. It was copied in effect by the cases that went to trial. And did your opening brief make any arguments about the Cerberus dismissal? Yes. Where? In the complaint itself. No, I'm talking about the opening brief on appeal before our court, which is the subject of the forfeiture. Yes, we did. Where? I will show you. I think it's in the beginning, Your Honor. Okay, page seven of the opening brief, Your Honor. At the bottom, states from the very beginning, the plaintiffs in this case have alleged that Kroger's requirement that Albertson distribute its total 2022 profit, $4 billion, to its shareholders would force Albertson to replenish the Treasury by substantially increasing the debt, not only as to Albertson complained bitterly, but that it had been taken advantage of, but it had also been suggested that Albertson may not now survive. And then we went through the private meeting that we know anything about, when right after the different judgments against them and stopping the merger, when they abandoned it, then when Albertson sued, they sued for various abuses for billions of dollars because they were misled. That's what they said. Well, they were crippled. They were not in a position to be able to go forward. They were the ones that said. Okay, I think we've heard enough. But I would like to say one thing, if I might, Your Honor, if I might be given one minute, if I might be given one minute. Less, less, but please be very brief. Thank you very much. Okay. The idea that no judgment should be given to the plaintiffs in this case would be contrary to the and I would point out to the court in American stores that American stores said specifically that even if there is a completion of a merger, the danger persists. Even if you have an injunction, the Supreme Court, I need glasses for sure. The Supreme Court said that even if the merger is of the law, the threatened harm to California consumers persists. And the quote that I was looking for before, Your Honor, is on page 17. And it was reported the very day of the judgments against them. It was reported that the new leadership and the new leadership in the new administration could be more open to a proposed merger between the country's two biggest super chains, Kroger and Albertson, which forged the $24.6 billion deal to combine in 2020. So the fact of the matter is, there is a wrap up, please. Okay, thank you very, thank you very much. Thank you, counsel. Thank you for your arguments. The matter will stand submitted as a housekeeping matter. We're going to take a brief recess. A five to 10 minute recess and we'll come back shortly. Thank you.
judges: WARDLAW, BEA, SANCHEZ